**MECHANICS NATIONAL BANK, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

Civ. A. No. 80–239.

United States District Court, District of Columbia.

Feb. 27, 1981.

**26**

Fred F. Gregory, Thomas E. Holliday, Gibson, Dunn & Crutcher, Los Angeles, Cal., Richard L. Dashefsky, William R. Hyde, Jr., Gibson, Dunn & Crutcher, Washington, D. C., for plaintiffs.

Rebecca L. Ross, Asst. U. S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiffs, Mechanics National Bank and Mechanics National Mortgage Corporation (collectively referred to as Mechanics), are seeking review of administrative action, declaratory judgment, and injunctive relief against the Department of Housing and Urban Development (HUD), the Secretary of HUD, and the Mortgage Review Board of HUD (the MRB or the Board). Plaintiffs complain that HUD withdrew their status as approved mortgagees in a federal housing program in violation of their rights to due process and equal protection, and in violation of the rights accorded them by the Administrative Procedure Act, 5 U.S.C. §§ 702–06. Jurisdiction is rightly predicated upon 28 U.S.C. § 1331(a). Presently before the Court are the parties' cross motions for summary judgment.

This dispute arises out of a program in which private lenders such as plaintiffs may obtain approval to participate in federal mortgage insurance plans. Pursuant to the terms of the National Housing Act, 12 U.S.C. § 1701 *et seq.*, mortgage insurance programs administered by the Federal Housing Authority (FHA) were established to provide insurance protection to eligible private lenders, who in turn made mortgage financing available to qualified home buyers. To police the programs, FHA relies upon mortgagees such as Mechanics to use their best efforts to obtain and verify information concerning the credit worthiness of each loan applicant. These best efforts include compliance with the applicable rules and regulations of HUD. Mortgagees are required to exercise the same care with regard to an FHA loan as with an uninsured one. Most importantly, mortgagees are required to obtain and verify financial information about applicants, such as assets and liabilities, and information about their employment history, including length, type, and amount of earnings. This is part of the process of loan origination. After the loan

has been made, the mortgagee is charged with servicing the obligation, including contacting delinquent mortgagors and securing properties.

Plaintiffs were approved for participation as mortgagees in the insurance programs in 1966 and 1973. In 1976, HUD's Office of Inspector General (IG) conducted an audit of Mechanics for the period 1974–75, one purpose of which was to determine if Mechanics was in compliance with HUD's policies, regulations, and requirements. During the audit period, Mechanics had processed approximately 1,800 loans, and of these the IG selected 47 for inspection. That selection was not on a random basis. On May 13, 1976, an exit interview between the IG auditors and Mechanics' officials took place, in which certain problems were discussed. The findings of deficiencies in loan origination and servicing procedures were made by the IG and set out in an Audit Report of June 21, 1976. On Sept. 6, 1976, an assistant inspector general recommended to the MRB that plaintiffs' approved status be withdrawn. In November of 1976, the Board notified Mechanics that it was considering such a withdrawal, provided plaintiffs with a copy of the Audit Report, and invited a response to the Report. Mechanics replied in December, detailing the measures it had taken to correct the problems. On March 31, 1977, the MRB met and unanimously determined to withdraw plaintiffs' approved status. No hearing was held. Mechanics was so notified on April 27, and it then appealed the determination. A de novo hearing on the issues took place, and the Hearing Officer sustained the withdrawal on March 6, 1979, subsequently amending his findings on July 27. Mechanics appealed the Hearing Officer's determination to the Secretary of HUD, who affirmed it in most respects on September 27, 1979, finding ample evidence to support the conclusions reached. Four months later, this action was commenced.

Defendants were first to move for summary judgment. They argue that the case is moot because the sanction against plaintiff was lifted on March 31, 1980, that the Secretary's decision was not arbitrary, capricious, an abuse of discretion or contrary to law, and, anticipating plaintiffs' chief objections, that Mechanics was not deprived of due process. Defendants also state that this Court should not consider issues not presented administratively or materials not contained in the administrative record. Plaintiffs have responded by rebutting defendant's contentions as to mootness and the scope of review, and by charging that the Secretary's decision was arbitrary, capricious, an abuse of discretion, lacking a rational basis, unsupported by substantial evidence, and erroneous as a matter of law. It also sets forth a long series of alleged violations of its rights to due process and equal protection, including assertions that the MRB withdrew the approved status without the required hearing or any evidence of urgency, and without notice of all the charges actually considered. Mechanics further contends that the Board was not a fair tribunal because one of the voting members was the IG, who also served in a prosecutorial function, and that the sanction was applied in a discriminatory fashion since other institutions found guilty of similar deficiencies were not penalized so severely. Finally, they argue that the regulatory provision upon which the withdrawal was based was unconstitutionally vague and ambiguous as applied to plaintiffs.

■ This case is not moot. It involves a real and substantial controversy, namely whether or not plaintiffs' conduct justified the sanction of withdrawal of its approved status. Plaintiffs' reputation, if nothing else, is at stake. Relief is available in the form of a decree which would declare that the action taken against Mechanics was not supportable. The Court must, therefore, hear the case. *See Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975).

■ The starting point for analysis of plaintiffs' contentions is the decision of the hearing officer after the de novo hearing on the issues and the affirmance by the Secretary. Although many of Mechanics allegations as to due process and statutory viola-

tions concern the MRB's initial termination finding, any defects in this regard could have been cured by the subsequent de novo hearing. *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980); *Blair v. Robstown Independent School District*, 556 F.2d 1331, 1334–35 (5th Cir. 1977); *Sparks v. City of Atlanta*, 496 F.Supp. 770, 772–73 (N.D.Ga. 1980). The only exception would be for instances in which the subsequent hearing was tainted by prior due process violations. Any other conclusion might place the Court in an untenable position. For instance, no appropriate remedy would be available if, in this situation or any similar one, there were a finding that the pretermination procedure was violative of due process, that the de novo hearing was not, and that any sanction was justifiable. It would be an exercise in redundancy to remand for a hearing such as was already held, and any order lifting the sanction would fly in the face of the conclusion that the sanction was appropriate. Plaintiff would not be without a remedy or be at the mercy of an unconstitutional process, since injunctive or declaratory relief would be available if a sanction which required a hearing were imposed without one. Since plaintiffs in this case did not seek such relief, the relevant inquiry here is whether the de novo determination by the hearing officer and the review by the Secretary accorded plaintiffs all their rights and were not contrary to law.

Plaintiffs do not seriously challenge the factual findings stated by the hearing officer and affirmed by the Secretary. The hearing officer found that plaintiffs were imprudent in their origination procedures in that among other things, they permitted applicants or interested third parties to hand carry verifications of employment or asset status instead of directly contacting the employer or financial institution. Plaintiffs failed to verify accounts which existed at Mechanics itself, and they also failed to rectify conflicting information within their own files concerning applicants' financial status. Plaintiffs did not conduct the required face-to-face interviews with applicants. These deficiencies resulted in false information being certified to HUD, and were found to be the result of inadequate supervision on the part of plaintiffs. The hearing officer also found minor deficiencies in plaintiffs' duty to secure property upon which mortgages were delinquent. Plaintiffs' dissatisfaction with these findings is limited mainly to their characterization. They contend that the origination deficiencies were of technical and clerical nature, while the hearing officer and the Secretary found them serious enough to warrant withdrawal.

■ Plaintiffs do specifically challenge one factual finding, that an employee of plaintiff had deliberately falsified employment information because the application containing the correct income data would not have been approved. This was disputed by plaintiffs at the hearing. As the Secretary later noted, resolution of this factual dispute turned on witness credibility, a matter peculiarly within the province of the hearing officer. He chose to believe the witness whose testimony sustained his finding, and there is no evidence in the record sufficient to reverse that conclusion. Accordingly, the Court holds that this and the other findings were supported by substantial evidence.

With regard to the other charges brought, the hearing officer ruled that the government had not met its burden. He refused to sustain the allegations that plaintiffs had falsely certified a loan, or that they had inadequately serviced delinquent mortgages, or that the officers, directors, and employees of Mechanics had improperly benefited from the above practices. Those findings are not at issue in this action.

■ Based on all the above findings, the hearing officer concluded that plaintiff had shown a lack of responsibility in loan origination, and that the deficiencies were standard procedures and part of a pervasive pattern of imprudent practices. He determined that the showing was sufficient to justify withdrawal, and, considering all the facts, that a length of three years was appropriate. He also specified that Me-

chanics should be reinstated if they could demonstrate that they had become a prudent lending institution.

The conclusions and determinations of the hearing officer were affirmed by the Secretary with minor modifications not relevant here. He characterized the plaintiffs' loan origination practices as an "unmistakable pattern of unconcerned disregard" for applicable requirements. Although plaintiffs contended before the Secretary as well as here that the violations were clerical or technical only, the Secretary rejected that assertion and found the violations serious because they increased the possibility of default and threatened the integrity of the insurance fund. Finally, he affirmed the sanction imposed as appropriate in the circumstances presented.

Subject to the objections considered below, the Court cannot state that the action taken by the Secretary in light of the findings was arbitrary, capricious, an abuse of discretion, or contrary to law. Plaintiffs do not deny the violations, but contest their characterization and whether they were sufficient as a basis for the sanction. They assert that mistakes in programs of this sort are inevitable to some degree. While that is undoubtedly true, what is present in this case is not isolated error, but at a minimum, negligent practices and procedures which led to a series of mistakes. It was well within the Secretary's discretion to conclude these practices were of a serious nature. Given that conclusion, the sanction chosen was not only not arbitrary, capricious, or an abuse of discretion, it was clearly reasonable.

■ Plaintiffs have asserted objections to this determination which relate obliquely to their objections to the MRB's initial finding. They argue that since the hearing officer was merely an employee of HUD, and not an administrative law judge, he would have been extremely reluctant to reverse the decisions of the MRB. As a consequence, the prior due process violations which caused the MRB's decision carried through and tainted the hearing officer's decision. This contention is rooted solely in speculation. There is no evidence that the hearing officer was reluctant to reverse, nor is there any evidence that improper pressure was exerted upon him. The Court finds that without such evidence, the contention is without merit. In a similar vein, plaintiffs state that the initial termination created, on its own terms, a presumption of validity. Had there been no termination, they argue that neither the hearing officer nor the Secretary would reasonably have imposed the sanction of withdrawal. To accept this would ignore the nature of the de novo hearing, in which all pertinent arguments and evidence were heard and the sanction found justifiable. Without any concrete showing that the sanction was sustained not on the basis of the hearing but rather on the basis of some alleged presumption of validity, this argument is likewise meritless.

■ Mechanics next contends that the provision upon which the adverse determination was based is unconstitutionally vague and ambiguous as applied to them. The provision, 24 C.F.R. § 25.5(h), allows withdrawal for "such other reasons as the Board, Secretary, under Secretary, or hearing officer, as appropriate, determine to be justified..." The essence of plaintiffs' argument is that since its deficiencies in origination were minor and of a type common to the industry, and since no other institutions have had their approved status withdrawn for such deficiencies, Mechanics could not have been on notice that the inadequacies were of such a proscribed nature that withdrawal could be imposed. Even assuming that no other institutions have been similarly penalized, plaintiffs' argument fails. This regulation must be examined in light of the facts presented here, see U. S. v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975), and the applicable standard is whether plaintiffs understood that the conduct at issue was proscribed. Parker v. Levy, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), quoting U. S. v. National Dairy Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963). Plaintiffs could not have been igno-

rant that a pattern of failure to comply with accepted banking practices and HUD procedures was prohibited conduct. Whether or not plaintiffs knew a specific sanction would be imposed for the prohibited conduct is not the same question as whether plaintiffs knew the conduct was prohibited. Since plaintiffs have not demonstrated that they reasonably believed that the deficiencies were acceptable behavior, it cannot be said that the regulation was vague as applied to plaintiffs.

 Mechanics' final assertion is that they were singled out for the sanction of withdrawal when "hundreds" of other mortgagees with similar violations were allowed to retain their approved status. The appropriate standard for objections of this nature was stated in *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), in which the Court found that the remedy imposed in administrative settings is peculiarly a matter for administrative competence, and should not be overturned unless unwarranted in law or without justification in fact. *Id.* at 185–86, 93 S.Ct. at 1458. As is already apparent, this Court has no hesitation in finding the sanction of withdrawal justified by the facts. Imprudent lending practices and submission of false data are clearly adequate grounds. As to whether the sanction was warranted by law, the enabling legislation places in HUD the duty to administer the programs, and gives it wide discretion to do so. HUD is nowhere denied the power to impose the sanction at issue, nor is there a requirement of uniform sanctions for similar offenses. Even if this sanction were more severe than in other cases, that would not render the sanction invalid. *Glover Livestock*, 411 U.S. at 187, 93 S.Ct. at 1458–59. There is, therefore, no reason to reverse the Secretary's decision on this basis.

In conclusion, the Court finds that the hearing and determination by the hearing officer and the Secretary violated none of Mechanics' rights to due process or equal protection. Therefore, any violations prior to the de novo hearing, if such existed, were cured. The administrative action taken was based on factual findings supported by substantial evidence, and was not arbitrary and capricious, nor an abuse of discretion, nor contrary to law. The sanction imposed was justified and warranted by law, and the meaning of the regulation upon which the sanction was based was sufficiently clear in the context of the facts presented. Judgment is consequently for defendants.